|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:17-CR-91 |
| | § | |
| ROBERTO HERNANDEZ | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Roberto Hernandez's ("Hernandez") Motions for Compassionate Release (#s 58, 61), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motions (#66). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motions. Having considered the motions, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.   Background

On June 7, 2017, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Hernandez with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). On October 2, 2017, Hernandez pleaded guilty to the charged offense[1] pursuant to a non-binding plea agreement. Subsequently, on June 11, 2018, the court sentenced

---

[1] In his motion, Hernandez claims that he "does not have a prior offense history of terrorism, violence, or a sex offense." Hernandez's assertion is blatantly false. The statute under which Hernandez was convicted, 18 U.S.C. § 2422(b), is contained within Chapter 117, which is entitled "Transportation for Illegal Sexual Activity and Related Crimes." Further, Hernandez's sentence includes a condition that he register as a sex offender upon his release from prison. To be clear, the crime for which Hernandez was convicted, attempted coercion and enticement of a minor, is a sex offense.

Hernandez to 168 months' imprisonment, followed by a 5-year term of supervised release. Hernandez is currently housed at Federal Correctional Institution Seagoville, located in Seagoville, Texas ("FCI Seagoville"). His projected release date is April 15, 2029.

II.     Analysis

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release

was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No.

2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Hernandez submitted a request for home confinement or early release to the Warden of FCI Seagoville on June 19, 2020. Hernandez's request was based on his potential exposure to COVID-19 and did not reference his age or medical conditions, which form the basis of his present motion. On July 24, 2020, Warden K. Zook denied Hernandez's request, stating:

> We have reviewed the criteria, and due to your conviction for Attempted Coercion and Enticement of a Minor, your Pattern Risk score of Low and your Public Safety Factor for Greatest Severity and Sex Offender, you are ineligible for release from home confinement at this time.

Hernandez has not exhausted his administrative remedies because he did not base his request to the Warden of FCI Seagoville on the same factors as his present motion. Nevertheless, even if Hernandez's request had included the grounds set forth in his current motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the

4

following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

A. Medical Conditions

In the instant motion, Hernandez contends that he is eligible for compassionate release due to his medical conditions, namely that he suffers from "Meniere's disease, asthma, and loss of hearing." The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, according to his Presentence Investigation Report ("PSR"), prepared on February 22, 2018, and revised on April 16, 2018, Hernandez informed Probation that he suffered from Meniere's disease, an inner ear disorder, and underwent surgery in 2008 to alleviate the symptoms of the disease, such as a feeling of spinning. Hernandez claimed that the surgery left him with deafness in his left ear and balance issues. When his PSR was prepared, Hernandez also reported that he has suffered from asthma since the age of 7 and required the regular use of inhaler medication. Hernandez's BOP medical records confirm that he has been diagnosed with Meniere's disease[2], allergic rhinitis, asthma, and gastro-esophageal reflux disease. At a clinical visit on July 18, 2019, G. Matewere, M.D., noted that Hernandez "states he has been doing fine. He denies headaches, dizziness, chest pain, dyspnea, diarrhea, or constipation." Hernandez is currently prescribed an albuterol inhaler and a mometasone furoate inhaler, for use as needed, as well as montelukast sodium to manage his asthma; ferrous gluconate to control his Meniere's disease; and omeprazole to treat his gastro-esophageal reflux disease. Thus, Hernandez's medical conditions are being monitored and actively managed by prescription medication, and there is no indication that he has experienced any other medical problems. Indeed, an April 20, 2020, chest x-ray confirmed that Hernandez's lungs are clear and that he does not suffer from an acute cardiopulmonary disease.

---

[2] According to the National Institute on Deafness and Other Communication Disorders, Meniere's disease is "a disorder of the inner ear that causes severe dizziness (vertigo), ringing in the ears (tinnitus), hearing loss, and a feeling of fullness or congestion in the ear."

Probation's investigation revealed that Hernandez is classified as a medical Care Level 1 inmate. According to BOP's Clinical Practice Guidance, "Care Level 1 inmates are less than 70 years of age and are generally healthy," but "[t]hey may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." Although Hernandez has been diagnosed with Meniere's disease, asthma, and hearing loss, his medical summary does not meet the criteria listed above. *See United States v. Thompson*, ___F.3d___, No. 20-40381, 2021 WL 37493, at *2 (5th Cir. Jan. 5, 2021). To the contrary, Hernandez's conditions are well managed with medication. *See id.* In addition, none of his medical conditions is terminal or substantially diminishes Hernandez's ability to provide self-care. While Hernandez was certified for disability in 2011 based on Meniere's disease, his medical conditions do not appear to have limited his ability to perform the activities of daily living independently while in BOP custody. Hernandez is housed in general population, has no medical restrictions, has no work limitations, is cleared for food service, and has successfully completed educational courses, including classes in automotive technology, for which he has obtained a certificate as a chassis service technician, while incarcerated.[3] Further, Hernandez's medical conditions, from which he has suffered since at least 2008, did not hinder or prevent him from committing his offense of conviction. Thus, Hernandez has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. Moreover, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18

---

[3] In his motion, Hernandez inexplicably asserts that he has "a mental impairment that not only prevents him from engaging in any substantial gainful activity, but can be expected to result in his death." This contention appears to be utterly baseless, as there is no indication that he suffers from any mental impairment. His PSR reveals that Hernandez reported that he "has never been diagnosed or treated for any mental illness" and " denied any history of suicidal thoughts."

U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Here, granting Hernandez compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94; *see Thompson*, 2021 WL 37493, at *3 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* In the instant case, releasing Hernandez after he has served at most only 30% of his sentence would similarly minimize the impact of his crime and the seriousness of his offense.

    B.    Age

Hernandez cursorily references his age as grounds for compassionate release. The USSG provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B). Here, according to Hernandez's PSR, he is 32 years old, well below the minimal threshold of 65 years. Further, there is no indication that he is experiencing a serious deterioration in his physical or mental health. Moreover, as of the date of his motion, Hernandez had served 42 months of his 168-month sentence, far less than the required amount of the lesser of 10 years or 75 percent of his term of imprisonment.

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(ii). For the reasons stated above, Hernandez also does not meet the alternative requirements for age-related compassionate release set forth in 18 U.S.C. § 3582(c)(1)(A)(ii).

### C. "Other" Reasons

Hernandez's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the

9

BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Hernandez for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Hernandez's situation. Hernandez expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of January 13, 2021, the figures available at www.bop.gov list 2 inmates (out of a total inmate population of 1,735) and 3 staff members at FCI Seagoville as having confirmed positive cases of COVID-19, 1,265 inmates and 42 staff members who have recovered, and 4 inmates who have succumbed to the disease. Indeed, according to Hernandez's BOP medical records, he tested positive for the disease in June 2020, was placed in isolation, and has now recovered from the virus. His medical records, dated July 30, 2020, note that he "is not severely immunocompromised and did not have

a severe illness requiring hospitalization." Thus, it appears that the facility where Hernandez is housed is handling the outbreak appropriately and providing adequate medical care.

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID)*; United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Neal*, No. CR 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020) ("Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who fall within the guidelines or demonstrate 'extraordinary and compelling reasons,' meriting a reduction in their sentence."); *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility.'" (quoting U.S.S.G. § 1B1.13)). Hernandez has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to warrant his release from imprisonment.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Hernandez's offense of conviction entails his attempted coercion and enticement of a minor.  On February 7, 2017, Hernandez responded to an online post made by an undercover Federal Bureau of Investigation special agent in which Hernandez expressed an interest in "TABOO."  Over the next three days, Hernandez and the agent continued exchanging messages, which eventually turned into a discussion of sexual conduct with minors.  Hernandez believed that the person with whom he was conversing had access to a 10-year-old female.  Hernandez indicated that he had previously engaged in sexual conduct with 13, 16, and 17-year-olds, exclaiming, "Let me tell you it's the best."

From February 10, 2017, to March 16, 2017, Hernandez continued sending the undercover agent email messages expressing an interest in engaging in sexual activity with the child.  Several days later, with the intent to persuade the female to engage in oral and vaginal intercourse, Hernandez asked the agent about how to get on the child's good side, the child's interests, gifts she might like, her sexual experience, and the parameters of sexual conduct he would be allowed with the child.  On May 11, 2017, Hernandez arrived at an apartment where he believed he was to meet the child, at which time he was arrested.

According to his PSR, Hernandez consumed alcohol daily from age 20 until the time of his arrest.  Hernandez indicated to Probation that his alcohol use was a problem and that it may have led to the poor decisions regarding his involvement in his offense of conviction.  A BOP medical record generated on November 30, 2020, shows Hernandez to have a current "Alcohol Use

12

Disorder: Severe." In view of the circumstances surrounding his offense of conviction and his substance abuse problem, the court cannot conclude that Hernandez would not pose a danger to any other person or to the community, if released from prison at this time.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 20,221 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, there is no reason to believe that Hernandez would not revert to his sexual misconduct involving minors and his abuse of alcohol if released from prison at this juncture.

In short, Hernandez has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not

sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.   Conclusion

Consistent with the foregoing analysis, Hernandez's Motions for Compassionate Release (#s 58, 61) are DENIED.

SIGNED at Beaumont, Texas, this 14th day of January, 2021.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE